## CRABILL *v.* TEETER.

PATENTS; INTERFERENCE; DILIGENCE; ORIGINALITY.

1. Delay of eighteen months in filing his application, by the junior applicant in interference, whose alleged conception, disclosure, and reduction to practice antedated those of the senior applicant, is satisfactorily explained by the fact that, when an officer of the company, of which the former was an employee, apparently on its behalf, authorized the development of the invention, the junior applicant was given to understand that he would be protected, since he was justified in relying upon his employer to that extent. (Citing *Shuman* v. *Beall,* 27 App. D. C. 324.)

2. Priority will be awarded to the junior applicant in an interference, in

which the issue is the question of fact as to which party originated the invention, where the senior applicant's case rests upon the stipulated testimony of his father, who hastened with him to an attorney's office to make application for patent the day following his son's alleged conception of the invention, and the testimony of one who, within a month after the senior applicant's alleged discovery, severed his connection with his employer to form, in conjunction with such applicant and his father, a company for the manufacture and sale of the articles in issue, in face of the fact that the employer of such witness had already taken steps to manufacture some of the articles in issue and place them upon the market, and where, to hold that the junior applicant did not originate the invention, would be to entirely ignore the testimony of his four unimpeached and reputable witnesses.

**No. 926.** Patent Appeal. Submitted November 11, 1914. Decided January 4, 1915.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding reversing a decision of the board of Examiners in Chief which had affirmed the decision of the Examiner of Interference. *Affirmed.*

The facts are stated in the opinion.

*Mr. Fred L. Chappell* and *Mr. Otis A. Earl* for the appellant.

*Mr. Arthur E. Dowell* for the appellee.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

This appeal is from a decision of the Commissioner of Patents in an interference proceeding reversing the decision of the board of Examiners in Chief, which had affirmed the decision of the Examiner of Interferences, and awarding priority of invention to Fred Teeter, appellee, on the following issue:

"1. A hose clamp comprising a body and an outwardly projecting ear and a forwardly projecting joint tongue at each end of said body formed integrally of sheet metal, said ears being formed by outward folds in said body and being per-

forated to receive a clamping bolt, said tongues being diagonally opposed extensions of the ends of the body and adapted to co-operate to form a continuous bearing extending between the ears and from edge to edge of the clamp.

"2. In a hose clamp, a body made from a single sheet of metal having bolt holes, the ends of the blank cut to form one half of the width of the blank, each end of the blank bent between the holes and at each side thereof to form ears with the reduced ends lapping by each other and well under the body of the blank to firmly brace the ears and form a continuous uniform bearing entirely around a hose to which it may be applied, and a securing bolt passed through the ears."

Appellant's application was filed November 29, 1909. In his preliminary statement appellant claimed conception, disclosure, drawings, and model of date November 1, 1909, and reduction to practice November 2, 1909. Appellee's application was filed May 15, 1911. In his preliminary statement, appellee claimed conception October 18, 1909, disclosure October 20, 1909, and reduction to practice the following day, October 21, 1909.

The question here presented is one of originality, each party claiming that he originated the invention, and that his opponent derived knowledge of it from him. The issue, therefore, is one wholly of fact. The time between the dates alleged is short, and the testimony of the witnesses is given largely from memory at a period long after the occurrence of the events in issue.

It appears that at the time the invention was produced in the fall of 1909, appellee was employed as foreman in the shops of the Walker Hose Clamp Company, at Battle Creek, Michigan. Appellant had been in the employ of this company as a traveling salesman, but was not in its employ at the date here in issue. Appellant's father was a salesman for this company, and in October, 1909, discovered a nut and bolt clamp on the market, a sample of which, accompanied by a letter dated October 15, 1909, he sent to the company, asking its cost and efficiency as compared with the Walker clamp.

Appellant claims to have disclosed the invention in issue to one Webster and other officers and employees of the Walker Hose Clamp Company during the month of November, 1909, and, in the middle of that month, to have entered into a contract with the Walker company, whereby it agreed to pay him a royalty on the clamps manufactured by it. He denies that he derived any knowledge of the invention from appellee. As to the contract it appears that the agreement was drawn by Webster without the knowledge of any of the other officers of the Walker company, and that the company knew nothing of the existence of any such contract.

Dies for the production of the clamp claimed in issue were made at the factory of the Walker company in December, 1909, and clamps were made therefrom to fill orders in January following. Appellee insists that these dies were produced for the company by him and other workmen under orders of Webster. The record indicates that appellee believed the dies were being made for the Walker company, and that in making them he was acting for the company. Appellant contends that the dies were made for him at his order, and that he bore the expense of their manufacture. Shortly after the dies had been completed and the first clamps made, Webster left the employ of the Walker company, and, together with appellant and appellant's father, formed a company known as the Crabill Clamp Company for the purpose of manufacturing and selling these clamps.

Appellant's earliest date claimed is November 1, 1909. On the following day, in company with his father, he went to Battle Creek, Michigan, and employed an attorney to prepare his application for a patent. The application was filed in the Patent Office on the 29th of the same month. Counsel for appellant make much of the delay of appellee of more than eighteen months in filing his application, and the Examiner of Interferences urges this circumstances against appellee in the following language: "Under such circumstances as have been shown to exist in the present case, and especially in view of the long delay on the part of Teeter in filing an application cover-

ing the invention in issue when both he and the Walker Hose
Clamp Company had every opportunity to learn that Crabill's
company was engaged in manufacturing the clamp in issue,
the burden is imposed upon Teeter to prove, by evidence which
shall be both clear and convincing, that he made the invention
prior to the time when he was ordered by Webster to make the
dies. It is evident that at this time Crabill knew of the inven-
tion, for Teeter has in effect admitted this by his allegation
that Crabill derived his first knowledge of the invention from
him some weeks previous. Since both parties possess a knowl-
edge of the invention at the time when work was started on the
dies it is incumbent upon Teeter to establish clearly that he
made the invention prior to that time." It is not strange that
appellee delayed in asserting his claims to the invention in the
Patent Office. When Webster, apparently on behalf of the
Walker company, authorized the development of the invention,
appellee was given to understand that he would be protected.
He was justified in relying upon his employers to this extent.
*Shuman* v. *Beall,* 27 App. D. C. 324.

We think that little more suspicion can be attached to the
delay of appellee in getting to the Patent Office than attaches
to the precipitate haste of appellant. However that may be,
it all resolves itself down to the weight to be given the testi-
mony of the respective parties as to the facts occurring during
the latter half of October and the early days of November,
1909. If appellee conceived the invention and reduced it to
practice prior to November 1, 1909, it matters not how long
he delayed in getting to the Patent Office, so far as this case is
concerned. The case can be disposed of by discarding the evi-
dence of both appellant and appellee. This course will avoid
much discussion as to the leading character of the questions
put to appellee, which objection can be applied with equal force
to the testimony of appellant. It will also avoid the discus-
sion of the apparent discrepancy as to dates between appellee's
testimony in chief and in rebuttal, which amounted only to
refreshing his memory in rebuttal from the date of the letter
of the elder Crabill of October 15, 1909. On this point it may

be suggested that the testimony of appellee in rebuttal, which is not in conflict with his testimony in chief, but more specific as to dates, corroborates the dates of conception and reduction to practice alleged in his preliminary statement, which had been filed long before the evidence was given.

Eliminating, therefore, the testimony of the contending parties, which course, we think, is of advantage to appellant, we find that appellant's case rests upon the stipulated testimony of his father, who hastened with him to the attorney's office to make application for patent the day following appellant's alleged conception of the invention, and the testimony of Webster, an employee of the Walker company, who, within a month after appellant's alleged discovery, severed his connection with his employer in form, in conjunction with appellant and his father, the Crabill Clamp Company for the manufacture and sale of the clamps in issue. This was done by Webster in the face of the fact that the Walker company had already taken steps to manufacture some of the clamps and place them upon the market.

On the other hand, appellee is supported by four unimpeached and, so far as the record discloses, reputable witnesses,—Walter Teeter, Burdick, Petrie, and Hall. The testimony of these witnesses is to be entirely ignored if we are to hold that appellee did not conceive and reduce to practice the clamp in question prior to November 1, 1909, appellant's earliest date. This we decline to do. On the face of this record we are convinced of the soundness of the conclusion reached by the Commissioner.

The decision of the Commissioner of Patents is affirmed, and the clerk is directed to certify these proceedings as by law required. *Affirmed.*